It's United States v. Tsosie. If counsel are ready, Ms. Delroy, you may proceed. Hi. My name's Karen Landau. May it please the Court? Oh, I'm sorry. I had the wrong order. That's all right. I've done this twice today. Ms. Landau, I know who you are. But I do represent Mr. Tsosie. It's even worse because I know who you are. So, please proceed. Very well, Your Honor. So, let me start by saying I'm going to try to reserve three minutes for rebuttal. And I'm going to address two issues. First, the question whether the defendant made a viable, a valid invocation of his right to silence. And second, the prosecutorial misconduct question. So, I think the question here is, does no mean no? You know, the defendant was being questioned by the police. And when the agent changed the subject, he said no. Well, but no means, I guess we have to take no in the context of what was said before. In other words, I think it's clear that if the agent had said, do you want to talk to us, or will you waive your rights or something like that, and he had said no, we'd have a clear assertion of Miranda rights. But I've listened to the tape and looked at the transcript, which I think is consistent with the tape. And it's not so clear that what Mr. Soce isn't saying isn't, no, I don't want to talk to you now. I'll talk to you in the truck. And that's not to me an unambiguous assertion of your right to remain silent as much as it is an assertion of your right to choose when you will, to choose the location in which you will talk. That is one interpretation. But we have to remember the purpose of Miranda here. And the purpose is that it places the onus on the officer to protect the defendant's rights. In other words, once somebody indicates in any, and I'm not, I'm, of course, forgetting the fashion, but once somebody indicates that they don't want to talk, the officer has to stop. He has to make an unambiguous assertion. Right, but what is no? I mean, this is, you know, again, we go back to Davis. The suspect doesn't have to speak with the articulation of an Oxford don, nor do most criminal defendants have that ability. He said no. Then he said, and then the agent says okay. And in the cases that are cited in the opening brief, that was enough to trigger, that was unambiguous. Now, he does say we can talk about it on the way. So I suppose you could say, well, that was a, that opened the door again. But then the agent starts talking about the fire, and he says, nah, uh, uh, uh, uh. Now, nah is just a slang word for no. Like nah, you know, it means no. And then after that, if you listen to the tape, which I did also, the agent just rolls right over him, and he doesn't honor the invocation at all. And once he says no, again, the onus is on the agent, not on the defendant to keep saying no. He doesn't have to say no multiple times. He doesn't have to say, no, I don't want to talk to you. That's the whole point of Miranda is that you say no once, and you don't have to say it again and again. I'm not sure it matters in this case, but I was looking at the nature of the statements later elicited. They're not on their face incriminating. No. In other words, he doesn't say, yeah, I did it. He has an alibi that turns out to be subject to disproof, and which he probably couldn't have otherwise gotten in front of the jury. Well, yes and no, but the point is that he told a story that the government used heavily in Cross to argue that he was a liar and that his statements showed consciousness of guilt. And the government, again, the government bears the burden of proving that that's harmless beyond reason. The reason I said this may not be an issue is nobody's contending in this case that if there were an error, it was harmless. Oh, no, the government is contending that it's harmless error. Well, are they? Yes, they are. There's a section in the brief on it. I mean, I responded to it. Perhaps I wasted my time. Well, maybe I missed this. But no, that's why I addressed it in the reply. Okay, well, so why isn't it? I mean, so here's my problem, and that's why I was thinking about it, and maybe I misstated the nature of the contentions. But if this doesn't come in, there's no explanation. He's got no defense at all. His defense is I was somewhere else, but he's not going to take the stand and say that. Right. And so then he's got no defense at all to the three eyewitnesses who say they saw him there. So I'm trying to figure out on balance whether he wasn't better off for at least being able to make a defense that said I was somewhere else even if it fails. No, Your Honor, because if he doesn't say anything, he's got the presumption of innocence. And we have three eyewitnesses who all had credibility problems, who all had demeanor problems, who gave testimony that was, some of it was inherently incredible, like I saw him pour gas on the fire, but nothing happened. So, you know, I think, I mean, it's, and I think the thing that makes this, that demonstrates it's not harmless error is the government's use of his statements in closing. And, you know, they're, you know, they're, you know, they, and again, this is discussed partly in the prosecutorial misconduct argument, but the government argued, you know, extensively that he was a liar. And I'm not challenging that they can't argue that he was a liar, but that type of consciousness of guilt, you know, they went through this whole thing about how, oh, he had to make up a story to show that he was, you know, he made this whole story and he wasn't on the video. You know, there was the whole thing about he said he went to the store, the little store, and then he didn't show up on the video. So there was all this, there was evidence that the government got from the statement and used to show that he was a liar. So, no, I would say that it's not harmless. And again, I think that the cases, the cases, really the cases relied on by the government demonstrate that it isn't harmless because those cases, all involved, they are largely habeas cases, where there's a different standard of review for harmless error. You have to make a higher showing on habeas. You have to prove that admission of your statement was substantially injurious to you. And that's not the standard here. The government has to show harmless beyond a reasonable doubt. If there's no more questions on that topic, I'll turn to the issue of prosecutorial misconduct. So in closing, the prosecutor really crossed the line. It was in closing rebuttal. And so I want to talk about the harmless error standard for this particular issue. For prosecutorial misconduct? Correct. If there were proper jury instructions and the government's review of the elements made clear that they needed to prove beyond a reasonable doubt, why isn't this sort of cured by, why isn't this just harmless error, the statements that were made? Well, a couple of reasons. First, okay, so it's a non-constitutional error. Well, that's kind of borderline because it did go to the burden of proof. But why is it not harmless? No, it really didn't go to the burden of proof. Nobody said he has to prove anything. It said in order not to believe these witnesses, you'd have to believe certain things about them. Right, and that does kind of shift the burden of proof. I'm not sure it does. Well, regardless, it's pretty clear misconduct. As to why it's not harmless, again, we go to sort of the government's theme, which is that the government argued, you know, we have these three eyewitnesses, and they're all good people, and they all have problems, but they're poor, and maybe they have drug problems. But they're all intimidated by my client. So there was a lot of this kind of demeanor stuff. There were problems with Lilania's demeanor. I forget her last name, sorry. And, you know, there was cross-examination. She said all kinds of different things. So I think when you say, and it was in closing rebuttal, so there was no curative instruction, the objection was overruled. And then the prosecutor repeated it again, and she said, the only way you can acquit this defendant is if you believe these three people are so black-hearted as to come in and make up a story to convict an innocent person. But wasn't that in response to the closing argument made by defense counsel, which said that these witnesses are lying? I don't think so, because, well, no, let me put it this way. It is not an acceptable response. Why not? The reason is because she went through this whole thing about how, well, you know, they're not lying, and she's completely entitled to say that they're not lying and my client is lying. I have no problem with that. But when you go that extra way and you say to acquit the defendant, you have to believe X. You have to believe basically that my witnesses are malicious. That is not invited, and that is a step too far. But why? That I just don't understand. Well, I mean, I can only say it. First of all, you don't get to comment. I mean, I think it starts with the case law in this circuit that you don't get to comment on the credibility, and you don't get to – I mean, you can argue why your witness is credible, but essentially what the prosecutor said here is that to acquit the defendant, you'd have to find this whole thing that's irrelevant. In other words, that these three witnesses are motivated, have an evil purpose. That's a non-relevant concern. Isn't it really more – to believe the defense closing argument, you would have to believe that these three witnesses all came in essentially conspired against? But you don't really because you could believe that some of them were lying. You could believe some of them – I mean, for example, who he left before the fire started. You could believe that some of them were lying and some of them were telling the truth. But there's a difference between telling a lie and conspiring to convict the innocent. I agree, but let's sort of parse this and see where you think the line was stepped over. The defense closing argument, I think, can rather clearly be read as these witnesses are lying. Yeah. They have motives to lie. They're druggies or whatever. So surely the prosecutor could say, well, the defense tells you that in order to – the defense tells you you should conclude these witnesses are lying. My argument is that the defendant's lying and not these witnesses. You can say that, right? Absolutely. So it's not the lying thing here that's troublesome. It's the black-hearted, cruel, and unkind, if you will. Yeah. And it also – I would, again, argue – and I'm going to run out of time in a minute. Again, that shifted the burden because, again, it's like you have to believe this other thing that is completely irrelevant. Well, but then we get back to Judge Desai's point. And as I understand the prosecutorial – assuming there was – case law, it's that you – we don't do a harmless error analysis. We have to determine whether it prejudiced. In other words, it's not a structural error for the prosecutor to make an improper argument. We then look to see whether or not the defendant has demonstrated a reasonable probability of prejudice from that. That's correct. And then determine that it was harmless beyond a reasonable doubt. So in the context of this case where really the entire defense was they're lying, my client's telling the truth, how can we conclude that this actually prejudiced her? Well, and again, I would go back to that's not the only factor. We look at the court's treatment. First, you have to decide whether there was misconduct. Second, you have to say, okay, was there a curative instruction? No, there wasn't a curative instruction. Third, did the defense have the chance to respond? No, the defense didn't have a chance to respond. So that was the last thing that the jury heard. Those factors support a conclusion that it wasn't harmless. You were trying to save these two minutes. I would like to. They're still yours. Thank you. And let's – did you – I do have a question. If you don't – I'm sorry. No, of course. I want to make sure I ask you this so that your friend on the other side has an opportunity to address it as well. So on the – you didn't talk about the Confrontation Clause issue, but I have a question because my understanding of whether or not there is an argument on appeal about a violation of the Confrontation Clause for the failure – for the district court's decision to not allow the recross, there needed to be some argument made below that there was new information that came up in the redirect that there wasn't an opportunity – that Mr. Sosek didn't have an opportunity to address in his cross. And I want to understand what the new matter is because you can't really get to the part of the Confrontation Clause unless you say there was new matter, I didn't have an opportunity to address this, and so therefore it would be a violation of my Confrontation Clause rights to not be able to have a recross. What's the new matter? So my best answer to that is that during the cross-examine – during redirect, okay, her demeanor was an issue the whole time, and I think during – on redirect, as I recall, and again this is on redirect, the – so she said one thing on direct, then she changed her story. She gave a lot – she was kind of all over the map. And then she came back and the prosecutor – she came back and she said, yes, I saw him pouring gasoline, yes, I saw him do this and do that. And then – and so then at that point, I guess I would say it was the reiteration of her prior testimony after he'd impeached her. And I admit it's not a new – I mean, there's a reason I didn't argue it. Okay, because I think that there's a fact problem here. I think you have to establish at the outset that there is some new matter that is very clear that there was no opportunity to talk about. And I don't see either in the transcript of that conversation with the judge – My recollection – oh, I'm sorry, I'm interrupting you. But my recollection, though, is that he did move to reopen Cross, so that would take it out of that. And I could be misremembering, and I'm sure the U.S. attorney will correct me if I'm wrong. All right, thank you very much. Since I prematurely excused you, I'm going to put two minutes back on the clock at the end for you. And Ms. Overlord – Ms. DeLorde, I'm going to get everybody's name wrong today. You're still up. Okay. May it please the Court, my name is Karla Hodes DeLorde. I'm representing the United States. With respect to the first issue regarding the defendant's invocation of his right to silence, I'd first like to point out to the Court that in the defendant's motion to suppress below before the district court, the defendant never took issue with his statement, no, I'm not, or later the second statement, nah. The only issue before the district court that they were complaining about was the statement that, we'll talk about it on the way. And the district court found that that was not a selective invocation of his right to silence. With regard to his statements, no, I'm not, and his subsequent statement, nah, I don't, I believe it's the government's position that the defendant is taking those words out of context. If you were to look at what exactly was said, FBI agent Sutherland said, we wanted to talk to you about something that happened last week that you were involved in. And the defendant questioned that he was even involved, saying, I was involved in? And agent Sutherland said, yeah. And the defendant answered, no, I'm not. And it's the government's position that by saying, no, I'm not, the defendant meant that he was not involved, not that he was invoking his right to silence. You don't have to persuade us of that, do you? All you have to do is persuade us that this was not an unambiguous invocation of his right to silence. Correct, yes. We don't have to interpret it as long as we think it's not in. Correct. As long as we think it's ambiguous. Yes. And so it's the government's position that this was not an unambiguous invocation of his right to silence. What about the subsequent? No, no, I'm not. What's the context of that? The context of that was agent Sutherland explained that the other agent wasn't going to go with them to Flagstaff. And he said, so we're going to talk about it here. And when I throw you in the truck, you can go back to sleep and I won't bother you. Then he said, so Rex and I are following up on the fire that happened over at Barney's house. And then the defendant responded, nah, I don't. Again, that was the government's position that he's not responding to the statement that they weren't going to talk about it right now, but rather the suggestion that he knew something about the fire. So, again, this is not an unambiguous invocation of the right to silence. Can I ask you to address the closing rebuttal argument? Yes. And what troubles me in the argument is not the sort of response that says, you know, you'd have to believe these people were lying to acquit because they described him committing the crime. But the black hearted, mean, cruel, those seem to step over, those characterizations seem to me to step over the line. Tell me why they don't. Your Honor, these statements do not step over the line, especially when reading them in context with the defendant's closing argument. And as Judge Bumate pointed out, the defense closing argument, he came out swinging about the credibility of the witnesses and how they were lying and dishonest and not credible and you couldn't believe them. And with respect to Bernadine Smith, he pointed out that she had been convicted of lying to cops and her explanation was to avoid jail. And then he asked, wouldn't that give her motive to lie in the case? She might lie to avoid going to jail. And then he talked about how you cannot believe these people. I'm pointing out the inconsistent statements. I'm not just nitpicking, but because you can't believe them. And then he questioned, he said, the defense counsel said, I recognize both Layla, I'm not exactly sure how to pronounce her name, and Bernadine are saying Vinny lit the fire, but why? We don't know why. And he said, I'm just demonstrating why you can't believe what they're saying. Why are they lying? I don't know. And I understand a response to that that says, you know, you'd have to believe they were lying and they're not. And here's all the reasons why. But why do you get to say that in order to acquit, you have to conclude that the prosecution witnesses are mean-hearted and cruel? Well, I believe it goes all to the whole prosecutor's argument. Black-hearted, I'm sorry. Black-hearted, cruel. Unkind. Unkind doesn't bother me. That's hardly a much of a pejorative thing to say. It goes to the prosecutors. If you look at her subsequent statements after that statement, it goes to her whole theme of why do people have a motive to lie? These three lay witnesses, not officers, they have no motive, no evidence, nothing to lie. And so she is merely responding. Like I said, the defense counsel came out swinging, unclosing that about how unbelievable these people are and how you can't credit them. And she is just responding to that. And prosecutors have wide latitude to respond to attacks. They are able to strike hard blows. Case law has said that. And it's just mainly her oratorical flourish in answering his comments and the strength of his comments, she's just saying that back and saying there's no other reason, no evidence, and no motive for these people to lie except for this reason. And that's perfectly fair rebuttal to the defense's closing arguments. But even if this court were to find that this was an improper argument, any error here is complete harmless error. As Judge Desai pointed out earlier, the court gave, properly instructed the jury and gave proper instructions about how the defendant did not have to prove innocence, the burden of proof lies with the government, and closing arguments are not evidence. During the closing, both the court and the defense reminded the jury that closing arguments weren't evidence, and the defense explicitly reminded the jury in his closing argument that the defendant was presumed innocent, and the government bore the burden of proving him guilty beyond reasonable doubt. In addition, the evidence of the defendant's guilt was overwhelming in this case. We had two eyewitnesses that saw the defendant light the fire or pour gasoline on it, and two other witnesses that placed the defendant at the scene of the crime. In addition, the physical evidence corroborated the witness's story about the fire starting in the southwest portion of the trailer and then spreading throughout. And I apologize, to address, if there's no more further questions on the first two issues, I'll address the last issue briefly regarding the confrontation clause. And the district court properly denied recross on this case because no new matter had been raised. What had happened is when the prosecutor asked whether Layla was afraid of the defendant, the defense objected. And they called the sidebar. And during the sidebar, the defense asked if he could reopen cross because he wanted to ask about Layla's demeanor, specifically whether she was high on the stand. And the district court asked the prosecution on direct if they had, if they, if, if they hit the, I'm sorry, the district court asked the prosecution whether on direct, it had asked Layla if she was nervous about testifying today. And the prosecutor responded, it had referring back to their question on directive, whether it was hard for her to be here in court today. And the district court found that the defense could have asked about Layla's examination and that it was not going to allow the creek recross. I'm not saying that this, that this case has these facts, but I'm interested if the defense said, well, her demeanor changed during redirect. And we never thought of asking her because her demeanor wasn't all that bad at the time of direct about whether or not she's under the influence. Would that be enough to allow a recross? Your honor. I do not believe that would be enough given this case because on cross, he thoroughly cross-examined her about her drug use during the fire. And he could have easily have brought up whether she was using drugs that day, because she, he thoroughly cross-examined her about that. In addition, everyone could observe her demeanor in court. And at the sidebar, he even, he even mentioned the fact that anyone can tell from her demeanor, something is going on with her. But so there was no, the court did not plainly err and not allowing the recross here and any error did not affect substantial rights because the defendant in his closing argument was able to argue about Layla's demeanor and why she was, why she could not be believed and why the jury should not believe her. So if there are no further questions, we ask that you affirm. Thank you. Give Ms. Landa back our couple minutes. So I only have a couple of points. So the first thing I wanted to say is that the government suggested at the beginning of its oral argument that the matter hadn't been raised to the district court and said that, you know, the district court, you know, they only talked about this. I don't want to, or we can talk about it on the way statement. To the extent that there's any plain error argument, that's waived. The government didn't make a plain error argument in its briefing. This is the first time it's been raised on appeal. Again, I wanted to go back to the no, I'm not. I think that the context supports a conclusion that it was an unambiguous invocation. It was, you know, he says, no, I'm not, when the subject changed. And then once they clarify the subject again, he says, nah, uh-uh. And there are the cases cited in the brief support that that is unambiguous. You know, there are, he, I mean, there are multiple cases where somebody waives initially and then the subject changed and then they invoke and that's what happened here. And then finally, on the prosecutorial misconduct argument, you know, I think it's important to understand the three witnesses for the government, well, Tobias Zani had it by all accounts left before the fire started. So let me just ask, on this point right here, so I think your best case is Ruiz. I think these sort of someone must be lying statement that Ruiz talks about makes clear that, I mean, I think that case is the best case for you for arguing that this came very close to shifting the burden. But in that case, ultimately, the court didn't reach the ultimate issue of misconduct because it said that it was harmless error. So that's why I'm really interested to know why, in your case, how do you distinguish this case from the result in Ruiz? Okay, so how I would distinguish this, for one thing, and that was sort of what I was going to say, actually, is that the two women who were the principal witnesses against him, who were there allegedly when the fire started, they were there. They were possible suspects. So, you know, there was, I mean, it wasn't argued that they were suspects, but certainly the jury could have said, oh, you know, I don't know who set the fire. You know, and plus it was an old, I mean, there were other things that could have gone wrong, but just that. And the language, the comment in Ruiz was a lot milder than this. Calling, you know, essentially the prosecutor accused the, you know, said if you're going to not find him guilty, you have to find that my witnesses have engaged in a criminal conspiracy. And that's a step, again, that's, you know, that is far beyond accusing somebody of lying or saying, you know, you can't believe this and here are all the facts and credibility, which I conceded in my brief. Those would be permissible. You know, a prosecutor can strike hard blows, but they can't cross the line, and this prosecutor crossed the line. And, you know, yeah. I mean, with that, that's really all I can say. I don't know if I've answered your question. Yeah, thank you. Thank you, counsel. And to demonstrate that I actually do know who both of you are, let me thank both Ms. DeLore and Ms. Landau for their arguments in this case and their excellent briefing. And with that, this case will be submitted. And we will be in recess until tomorrow.
judges: HURWITZ, BUMATAY, DESAI